UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

JOHN N. LEWIS and           )
SUSAN A. LEWIS,            )
                              )
        Plaintiffs,         )
                              )
v.                             )     Civil Action No. 16-cv-11122
                              )
BANK OF NEW YORK MELLON    )
TRUST COMPANY, N.A., as Trustee,   )
MORTGAGE ELECTRONIC       )
REGISTRATION SYSTEMS, INC. and  )
WELLS FARGO BANK, N.A.,      )
                              )
        Defendants.       )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants Bank Of New York Mellon Trust Company, N.A., as Trustee ("BONY"),

Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A. ("Wells

Fargo," and collectively, "Defendants") submit this memorandum of law in support of their

motion to dismiss the verified complaint (the "Complaint") filed by Plaintiffs John N. Lewis and

Susan A. Lewis ("Plaintiffs") under Fed. R. Civ. P. 12(b)(6).

### I.     Introduction.

Plaintiffs' Complaint is an attempt to invalidate the assignment of their mortgage from

MERS to BONY and to prevent the foreclosure of their property by Wells Fargo, as servicer for

BONY. Plaintiffs' four-count Complaint, however, fails as a matter of law because each claim is

predicated on the incorrect legal conclusion that MERS lacks legal authority to assign the

mortgage. The First Circuit has conclusively rejected Plaintiffs' position and confirmed that

MERS, as mortgagee and acting as nominee on behalf of a lender and the lender's successors

and assigns, may validly assign a mortgage. See Jepson v. HSBC Bank USA, N.A., 2014 U.S. App. LEXIS 24246, at *2 (1st Cir. 2014); Mills v. U.S. Bank, NA, 753F.3d 47, 53 (1st Cir. 2014); Butler v. Deutsche Bank Trust Company Americas, as Trustee for Rali 2007 QS3, 748 F.3d 28, 32-33 & n.3 (1st Cir. 2014); Serra v. Quantum Serv., Corp., 747 F.3d 37, 40 (1st Cir. 2014); Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 355 (1st Cir. 2013); Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 293 (1st Cir. 2013); Lindsay v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 129694, at *23-25 (D. Mass. June 14, 2013); see also Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 209-210 (2014). Because Plaintiffs' claims fail as a matter of law, the Court should dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

## II.     Factual Background.

On December 22, 2004, Plaintiffs purchased property located at 22 Cutler Road, Needham, Massachusetts (the "Property"). See Compl. ¶¶ 5, 6. To finance their purchase, Plaintiffs executed a promissory note in favor of Peoples Mortgage Corporation ("PMC") in the principal amount of $1,200,000 (the "Note"). See Compl. ¶ 6; Compl. Ex. 1, Note. To secure the Note, Plaintiffs granted a mortgage to MERS acting as, "*nominee for [PMC] and [PMC's] successors and assigns*" (the "Mortgage," and together with the Note, the "Mortgage Loan"). See Compl. ¶ 6; Compl. Ex. 2, *Mortgage* (emphasis added). The Mortgage identifies MERS as "the mortgagee under this Security Instrument." See Compl. Ex. 2, p. 1.[1] In October 2014, Plaintiffs defaulted on the Mortgage Loan after they apparently made the unilateral decision to cease payments. See Compl. ¶ 10 ("The plaintiffs stopped paying the mortgage in October of 2014, upon a coincidental review of their title which revealed that PMC had been dissolved and

---

[1] Plaintiffs' allegations in the Complaint are incomplete. They claim that MERS was "representing itself to be acting as the Nominee of PMC." See Compl. ¶ 11. This is incorrect because as the Mortgage states, MERS was the mortgagee and nominee for PMC *and* PMC's successors and assigns.

that there was no record of any assignment of the mortgage … or that the Note had been sold, transferred, or assigned to a subsequent holder.")  Shortly thereafter, on December 19, 2014, MERS assigned the Mortgage to BONY (the "Assignment").  See Compl. ¶ 11; Compl. Ex. 4, *Assignment*.  Wells Fargo has been, at all relevant times, acting as loan servicer for BONY.  Compl. Ex. 4, *Assignment*; Compl. Ex. 6, *Letter*.  BONY retained counsel to file a Servicemembers Civil Relief Act case in the Massachusetts Land Court in July of 2015.  Compl. ¶ 14.  Seeking to stop BONY from exercising the power of sale and conducting a foreclosure under the Mortgage, Plaintiffs filed this suit in the Massachusetts Land Court on May 26, 2016.  Plaintiffs assert claims for (1) declaratory judgment; (2) injunctive relief; (3) conversion; and (4) violations of G.L. c. 93A.

<div align="center">III.      Arguments & Authorities.</div>

A.      Fed. R. Civ. P. 12(b)(6) Legal Standard.

A complaint must be dismissed where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the … claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'"  Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)).  To survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  "Where a complaint pleads facts that are 'merely inconsistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (internal citations omitted).  Plaintiffs' claims in this case all fail as a matter of law because they are not "plausible."  Indeed, Plaintiffs' claims fail as a matter of law because they have <u>no chance of success</u> where they are based upon the erroneous legal conclusion that MERS lacks authority to assign the Mortgage, an assertion that has been expressly and conclusively rejected by the First Circuit. <u>See</u> <u>Jepson</u>, 2014 U.S. App. LEXIS 24246, at *2; <u>Culhane</u>, 708 F.3d at 293.

B.      <u>MERS Has Authority To Assign The Mortgage.</u>

Despite Plaintiffs' contention to the contrary, MERS had authority to assign the Mortgage to BONY.  First, the Mortgage contract, itself, authorizes MERS to assign the Mortgage.  <u>See</u> Compl. Ex. 2, p. 1.  The Mortgage expressly states: "Borrower does hereby mortgage, grant, and convey to MERS (solely as nominee for Lender and Lender's successors and assigns ***and the successors and assigns of MERS***, with power of sale, the following described property … ").  Ex. 2, p. 1 (emphasis added).  Thus, as mortgagee, MERS was authorized to assign the Mortgage on behalf of "[PMC's] successors and assigns" to BONY.  The inclusion of "the assigns of MERS" in the granting clause of the Mortgage explicitly contemplates its assignment.  <u>See</u> Ex. 2, p. 1.[2]  This language, on its own, is dispositive of the issue of mortgage assignability and deprives Plaintiffs of their own suggestion that MERS had no authority to assign the Mortgage.  Because Plaintiffs gave MERS contractual permission to assign the Mortgage, their claim that MERS lacked authority to assign the Mortgage fails.

---

[2] There is additional language in the Mortgage confirming that Plaintiffs recognized and acknowledged MERS's role as mortgagee and nominee:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

<u>See</u> Compl. Ex. 2, p. 2.

In addition to the express contractual language establishing that MERS was authorized to assign the Mortgage, controlling law confirms that to be the case. In Massachusetts, the note and the mortgage need not be held by the same entity. See Culhane, 708 F.3d at 292; Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 576 (2012) ("As a consequence, in Massachusetts a mortgage and the underlying note can be split."). The mortgage is always subject to the note, however, because the note is the beneficial interest and the mortgage is the legal interest. Id. at 293 (citing Eaton, 462 Mass. at 575-76). MERS is named as the "mortgagee of record in the mortgage so that beneficial ownership and servicing rights of the note may be transferred among MERS members without the need to publicly record such assignments." Rosa, 821 F.Supp.2d 423, 429 (D. Mass. 2011).

The First Circuit has repeatedly held that MERS's status as mortgagee and nominee comports with Massachusetts law, and that MERS has the authority to assign mortgages. Culhane, 708 F.3d at 292 ("[The] MERS framework … corresponds with longstanding common-law principles regarding mortgages."); Serra, 747 F.3d at 40; Butler, 748 F.3d at 32–33; Mills, 753 F.3d at 52; Woods, 733 F.3d at 355. Further, it is well settled that MERS, as mortgagee and nominee for a lender and the lender's successors and assigns, has lawful authority to assign a mortgage. See Jepson, 2014 U.S. App. LEXIS 24246, at *2 (rejecting challenges based on the claim that MERS lacked authority to assign the mortgage); Mills, 753F.3d at 53 ("Because legal title to the mortgage remained vested in MERS and not in the noteholder, the intermediary transfers of the note in no way undermined the subsequent assignment of the mortgage from MERS to OneWest."); Serra, 747 F.3d at 40 (holding any attack on MERS's power to assign mortgages "willfully disregards this Court's holding in Culhane."); Woods, 733 F.3d at 355 (rejecting argument that MERS's status as "nominee" for lender "render[ed] it unable to properly initiate an assignment."); Culhane, 708 F.3d at 293 (""MERS's role as mortgagee of record and

custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law."); Lindsay, 2013 U.S. Dist. LEXIS 129694, at *31 ("By retaining legal title, MERS had authority to make assignments independent of the note."); see also Sullivan, 85 Mass. App. Ct. at 209-210 (rejecting arguments challenging validity of assignment by MERS as nominee) ("*The MERS Assignment Cases*").

Plaintiffs' Complaint fails as a matter of law because it relies upon the erroneous proposition that MERS lacked authority to make the Assignment. See Compl. ¶¶ 11, 12, 25, Wherefore Clause at 3. Specifically, Plaintiffs claim the assignment is void because "MERS, representing itself to be acting as the Nominee of PMC," assigned the Mortgage to BONY after PMC had dissolved. See Compl. ¶¶ 11, 12, Wherefore Clause at 3; see also Compl. ¶ 25 ("MERS did not have legal title or authority to make the assignment"). Plaintiffs' pleading omits a critical, material fact, likely because its inclusion is fatal to any claims. MERS was not limited to being the nominee for PMC, but also the nomine for PMC's *successors and assigns*. See Compl. Ex. 2, p. 1. These words, omitted by Plaintiffs, are critical and dispositive. There is no dispute that MERS was identified as the mortgagee of the Mortgage. Thus, as mortgagee, it was authorized to assign the Mortgage on behalf of "[PMC's] successors and assigns" to BONY. See Sullivan, 85 Mass. App. Ct. at 209-210. Because MERS was authorized to make the Assignment as a matter of law, Plaintiffs' claims, all of which allege to the contrary, must fail.

C. **Plaintiffs Fail To Establish Any Plausible Entitlement To Relief Under Any Causes Of Action In The Complaint.**

1. *Count I Seeking Declaratory Relief Fails Because MERS Had Authority To Assign The Mortgage After PMC's Dissolution.*

In Count I, Plaintiffs seek a declaration that "[t]he Assignment from [MERS] to [BONY] is fraudulent and void" and that BONY "does not have the right to foreclose" on the Property fails as a matter of law. See Compl. ¶¶ 11, 12, Wherefore Clause, at 3. "In a case of actual controversy," a court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); see also G.L. ch. 231A, § 1 ("The [Court] … may … make binding declarations of right … in any case in which an actual controversy has arise[n][.]"). Here, although there is an actual controversy, Plaintiffs' request for declaratory judgment is predicated solely on the erroneous proposition that MERS lacked authority to assign the Mortgage to BONY. As described above, it is well settled in the First Circuit that MERS is authorized to assign a mortgage. See supra, p. 5-6, *The MERS Assignment Cases*. Therefore, because MERS, as nominee for PMC's successors and assigns, was authorized to assign the Mortgage to BONY, Plaintiff is not entitled to a declaration that the Assignment of Mortgage from MERS to BONY is "fraudulent and void."[3] See Compl. Wherefore at 3; Compl. Exs. 2, 4.

2. *Count II Seeking Injunctive Relief Fails Because Plaintiffs Cannot Establish A Substantial Likelihood Of Success That BONY Is Not The Mortgagee.*

Similarly, Plaintiffs' second count, which is a claim for injunctive relief, fails because they cannot establish a reasonable likelihood of success upon the merits of any claim they have pleaded to establish that BONY is not the mortgagee. A request for injunctive relief is not a cause of action, but rather an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc.,

---

[3] Furthermore, contrary to Plaintiffs' assertions, because MERS was authorized to assign the Mortgage to BONY, BONY is entitled to foreclose on the Property.

555 U.S. 7, 22 (2008). Specifically, "[a] party seeking a preliminary injunction must establish that (1) it is substantially likely to succeed on the merits of its claim; (2) absent the injunction there is 'a significant risk of irreparable harm'; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). In their claim for injunctive relief, Plaintiffs assert "plaintiffs have a substantial likelihood of success on the merits as there is no dispute of material fact the [BONY] is neither the mortgagee *by assignment from PMC*, nor the holder of the Note." See Compl. ¶ 19 (emphasis added). Plaintiffs conflate and confuse the issue. BONY did not become mortgagee by virtue of an "assignment from PMC." Rather, BONY became mortgagee by assignment from MERS. See Compl. Exs. 2, 4. MERS was named the mortgagee in the Mortgage executed by Plaintiffs and was granted the authority to assign its interest. See Compl. Ex. 2, p. 1, 2 ("Borrower does hereby mortgage, grant, and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) ***and the successors and assigns of MERS***, with power of sale, the following described property … "). And, the First Circuit has conclusively held that MERS, as mortgagee, is authorized to assign a mortgage. See supra, p. 5-6, *The MERS Assignment Cases*. Because Plaintiffs' claims are predicated upon the erroneous theory that MERS cannot lawfully assign the Mortgage, Plaintiffs cannot demonstrate any likelihood of success on the merits of their claim and cannot obtain injunctive relief.

3. *Count III For Conversion Fails Because Plaintiffs Cannot Establish That Wells Fargo Wrongfully Collected Plaintiffs' Monthly Mortgage Payments.*

Count III of Plaintiffs' Complaint alleges that America's Service Company ("ASC"), a division of Wells Fargo, acting as loan servicer, "was not the authorized agent *of PMC* to receive the [monthly mortgage payments] and converted the them [sic] to its own use." See Compl. ¶ 23.[4] Plaintiffs' conversion claim fails as a matter of law because it is premised on the erroneous conclusion that ASC was not authorized to collect their mortgage payments. To succeed on a claim for the tort of conversion, a plaintiff must show, "an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession. See Kelley v. LaForce, 288 F.3d 1, 11–12 (1st Cir. 2002) (citing Third Nat'l Bank v. Continental Ins. Co., 388 Mass. 240 (1983)). A conversion claim cannot be maintained without "proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it … ." Kelley, 288 F.3d at 12 (citation omitted). Plaintiffs cannot establish Wells Fargo wrongfully collected their monthly mortgage payments or intended to deprive Plaintiffs of these payments. Like their other claims, Plaintiffs rely on the misplaced conclusion that PMC somehow remained the owner of their mortgage loan. See Compl. ¶ 23. This again appears to be based upon the erroneous conclusion that MERS lacked authority to assign the Mortgage to BONY. See Compl. ¶ 21-23. In reality, ASC has at all times been the loan servicer for BONY, and as servicer for BONY, it was entitled to collect mortgage payments from Plaintiffs. See Compl. Ex. 6. Plaintiffs simply cannot establish a plausible claim for conversion where they were voluntarily sending their mortgage payments to the indisputable loan servicer for the owner of their Mortgage Loan.

---

[4] This cause of action is not directed at the other defendants, only Wells Fargo.

4.      *Defendants Did Not Violate M.G.L. Chapter 93A.*

Finally, in Count IV Plaintiffs assert that Defendants' conduct was unfair and deceptive in violation of M.G.L. Chapter 93A because "MERS did not have legal title or authority to make the assignment" to BONY.  <u>See</u> Compl. ¶ 25.  Like their other claims, Plaintiffs' Chapter 93A claim fails as a matter of law because it is based entirely upon the faulty conclusion that MERS was not authorized to assign the Mortgage to BONY.  <u>See</u> supra, p. 5-6, *The MERS Assignment Cases*.  Because MERS's assignment of the Mortgage to BONY was proper, BONY's subsequent action to enforce the power of sale in the Mortgage after Plaintiffs' admitted default is not unfair or deceptive.  As a result, Plaintiffs have not stated a claim under Chapter 93A.

IV.      <u>Conclusion.</u>

For the reasons set forth above, Defendants respectfully request that the Court (1) grant their motion to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6); (2) enter judgment dismissing the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6); (3) and grant such other and further relief that it deems appropriate.

<div style="margin-left:40%">

Respectfully submitted,
Defendants,
Bank Of New York Mellon Trust Company, N.A.,
as Trustee, Mortgage Electronic Registration
Systems, Inc., and Wells Fargo Bank, N.A.
by their attorneys,

*/s/ Sean R. Higgins*
Sean R. Higgins (BBO #659105)
sean.higgins@klgates.com
Hollee M. Watson (BBO #691480)
hollee.watson@klgates.com
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
(617) 261-3175 (fax)

</div>

Dated:  July 1, 2016

<u>CERTIFICATE OF SERVICE</u>

I, Sean R. Higgins, certify that on July 1, 2016, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail, postage prepaid, to those indicated as non-registered participants.

*/s/ Sean R. Higgins*
Sean R. Higgins