UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN N. LEWIS and | ) | |
| SUSAN A. LEWIS, | ) | |
|     Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 16-cv-11122 |
| BANK OF NEW YORK MELLON | ) | |
| TRUST COMPANY, N.A., MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEM, INC. and WELLS FARGO | ) | |
| BANK, NA | ) | |
|     Defendants | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**Background.**

The plaintiffs are the record title holders as tenants by the entirety of the residential property located at 22 Cutler Road, Needham, Norfolk County, Massachusetts, by a deed recorded on June 18, 1992, in the Registered Land section of the Land Court, Norfolk County Registry of Deeds, Certificate No. 134855. Cmplnt. ¶ 5. On December 22, 2004, the plaintiffs gave Peoples Mortgage Corporation a thirty (30) year, adjustable rate, interest only, Promissory Note (the "Note"), in consideration of one million, two hundred thousand dollars ($1,200,000). Cmplnt. ¶ 6, Ex. 1. The Note was secured by a mortgage on the Cutler Road property (the "Mortgage"). Complaint ¶ 7, Ex. 2. The Mortgage was recorded in the Registered Land Section of the Land Court, Norfolk County Registry of Deeds, on December 30, 2004, Document No. 1,050,367. Cmplnt. ¶ 7, Exhibit 2. Peoples Mortgage Corporation ("PMC") was voluntarily dissolved by the Massachusetts Secretary of State on November 14, 2008. Cmplnt. ¶ 9, Exhibit 3. The plaintiffs stopped paying the mortgage in October of 2014, upon a coincidental review of

their title which revealed that PMC had been dissolved and that there was no record of any assignment of the mortgage in the Land Court or Norfolk Registry of Deeds or that the Note had been sold, transferred or assigned to a subsequent holder. Cmplnt. ¶ 10. On January 2, 2015, Mortgage Electronic Registration System, Inc. ("MERS"), representing itself to be acting as the Nominee of PMC, recorded in the Registered Land Section of the Land Court, Norfolk County Registry of Deeds, Document No. 1,320,930, a document prepared by Wells Fargo Bank ("WFB"), dated December 23, 2014, and titled "Corporate Assignment of Mortgage" (the "Assignment"), purporting to be an assignment of the mortgage given by the plaintiffs to PMC from PMC to Bank of New York Mellon Trust Company ("BoNYM") and which Assignment was purportedly signed by "Yves-Akara Kenao, Assistant Secretary, on behalf of Mortgage Electronic Registration Systems, Inc., as Nominee for Peoples Mortgage Corporation." Cmplnt. ¶ 11, Exhibit 4. On May 18, 2016, WFB, representing itself to be acting as agent for BoNYM, recorded in the Registered Land section of the Land Court, Norfolk County Registry of Deeds, Document No. 1,352,415, a document dated March 16, 2016, and titled "Affidavit Pursuant to M.G.L. ch. 244 §§ 35B and 35C" ("Affidavit"), falsely swearing that BoNYM was both the Mortgagee, by the Assignment, Exhibit 3, and falsely swearing that, according to WFB's records, BNYM was the "holder of the promissory note secured by the above mortgage." Cmplnt. ¶ 13. On July 10, 2015, BoNYM initiated foreclosure proceedings against the Cutler Road property by its Attorneys Orlans Moran, PLLC filing a Complaint under the Service members Civil Relief Act in the Massachusetts Land Court, Docket No. 15 SM 005597, intentionally misrepresenting that it was the Mortgagee by the fraudulent assignment and subsequently fraudulently claiming that it was the Mortgagee in an Order of Notice filed on with the Land Court, served on the

2

plaintiffs and published in the Needham Times. Cmplnt. ¶ 14. No documents reflecting MERS transfer of the beneficial interest of Peoples Mortgage Corporation to Nomura Asset Acceptance Corporation or from Nomura to JP Morgan Chase Bank or from JP Morgan Chase to BoNYNM was ever recorded in the Land Court or the Registry of Deeds. Cmplnt. ¶ 15.

**Legal Standard.**

    **A. Motion to Dismiss.**

As set forth by this Honorable Court in Egan v. Tenet Health Care d/b/a Metrowest Homecare and Hospice, et al., 2016 WL 3561866:

> On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give ... plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

The plaintiffs' Complaint sets forth sufficient facts to state claims for a declaration that the assignment of the mortgage by the MERS was fraudulent and void (Count I); an injunction against foreclosure by the purported assignee and mortgagee, the BoNYM (Count II); conversion of the mortgage payments collected by the WFB on behalf of a dissolved lender (Count III); and violation of the Massachusetts Consumer Protection Act, General Laws, Chapter 93A, by the

defendants for failure to comply with the Massachusetts foreclosure statute, G.L. c. 244, § 14, and violation of the consent decree entered into with the Massachusetts Attorney General by MERS and WFB (Count IV).

**B. Declaratory Judgment.**

This action was originally brought in the Massachusetts Land Court for a declaratory judgment pursuant to G.L. c. 185[1] & c. 231A,[2] and was removed by the defendants on the basis of diversity jurisdiction. The standard for declaratory relief by the Land Court is set forth in <u>Froio Management Group, Inc., et al, ve. Bargain Discount Markets, Inc</u>., *Memorandum and Order Denying Defendant' Motion to Dismiss*, Foster, J., 2015 WL 8764280 (MA Land Court, 2015):

> "The land court ... may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby ... in any case in which an actual controversy has arisen and is specifically set forth in the pleadings."

---

[1]G.L. c. 185, § 1. The land court department shall have exclusive original jurisdiction of the following matters:

(e) Complaints to determine the validity of encumbrances, under sections eleven to fourteen, inclusive, of chapter two hundred and forty.
(f) Complaints to discharge mortgages, under section fifteen of chapter two hundred and forty.

[2] G.L. c. 231A, § 1. The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such; provided, that nothing contained herein shall be construed to authorize the change, extension or alteration of the law regulating the method of obtaining service on, or jurisdiction over, parties or affect their right to trial by jury.

G.L. c. 231A, § 1. "The determination of contractual rights is a proper subject of a declaratory judgment proceeding." Sahli v. Bull HN Info. Sys., Inc., 437 Mass. 696, 705 (2002). For a declaratory judgment to issue under G.L. c. 231A, "the plaintiff must demonstrate that an actual controversy exists and that he has legal standing to sue." District Attorney for the Suffolk Dist. v. Watson, 381 Mass. 648, 659 (1980), citing Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977).

An actual controversy is a "real dispute caused by the assertion by one party of a legal relation, status, or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." Bunker Hill Distrib., Inc. v. District Attorney for Suffolk County, 376 Mass. 142, 144 (1978), quoting School Comm. of Cambridge v. Superintendent of Sch. of Cambridge, 320 Mass. 516, 518 (1946) (internal quotations omitted). The actual controversy must be one which would sufficiently survive a motion to dismiss, Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977), and may be present whether or not the plaintiff's rights have already been impaired. District Attorney for the Suffolk Dist ., 381 Mass. at 659; School Comm. of Cambridge, 320 Mass. at 518. To have standing for purposes of G.L. c. 231A, a plaintiff must have a "definite interest in the matters in contention in the sense that his rights will be significantly affected by a resolution of the contested point." Bonan v. City of Boston, 398 Mass. 315, 320 (1986).

Chapter 231A is remedial in nature and is to be liberally construed. G.L. c. 231A, § 9. "The purpose of both the actual controversy and the standing requirements is to ensure the effectuation of the statutory purpose of G.L. c. 231A, which is to enable a court 'to afford relief from ... uncertainty and insecurity with respect to rights, duties, status, and other legal obligations.' " Galipault v. Wash Rock Invs., LLC, 65 Mass.App.Ct. 73, 85 (2005), quoting G.L. c. 231A, § 9; see *Sahli*, 437 Mass. at 705. Declaratory judgment proceedings are "concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties." Mass. Ass'n of Indep. Ins. Agents & Brokers, Inc., 373 Mass. at 292–293.

**Analysis.**

**I.     Count I Of The Complaint States A Claim For A Declaration That The Mortgage Given By The Plaintiffs to Peoples Mortgage Corporation ("PMC") In 2004, And Purportedly Assigned By The Defendant Mortgage Electronic Registration System, Inc., As Nominee of PMC, To Bank Of New York Mellon in 2014, Six Years After PMC Was Voluntarily Dissolved, Was Fraudulent And Void (Prayer A).**

The defendants contend that the plaintiffs[3] cannot sustain the first element, survival of a motion to dismiss, because MERS's right to foreclose as mortgagee has been upheld by both the state and federal courts.

---

3

The First Circuit in Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 289 (1st Cir.2013), addressed the issue of "[w]hether a mortgagor has standing to challenge the assignment of her mortgage" when the mortgagor is not a party to the assignment and is not a third party beneficiary. The First Circuit in Culhane acknowledged the peculiarities in mortgage foreclosures and found that several prior decisions that denied a plaintiff standing "paint[ed] with too broad a brush." Id. at 290. Specifically, two key aspects of mortgages circumvent the general principle that nonparties may not challenge a contract: first, a mortgagor in Massachusetts has a right to ensure that a foreclosure is lawful because only the mortgagee has the statutory power of sale; and second, mortgages permit foreclosure without prior judicial authorization. Id.; see U.S. Bank Nat'l Ass'n v. Ibanez,458 Mass. 637, 941 N.E.2d 40, 50 (Mass.2011). Lindsay v. Wells Fargo Bank, N.A., Not Reported in F.Supp.2d, 2013 WL 5010977.

The plaintiffs, as mortgagors, may challenge the foreclosure as "void by reason of [the mortgagee's] lack of legal authority to conduct it." Bank of N.Y. Mellon Corp. v. Wain, 85 Mass.App.Ct. 498, 502 (2014) (Wain ), quoting from Sullivan v. Kondaur Capital Corp., 85 Mass.App.Ct. 202, 206 (2014). "Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure ... is void." U.S. Bank Natl. Assn, v. Ibanez, 458 Mass. 637, 647 (2011) (citation omitted). Hully v. Deutsche Bank Nat. Trust Co., *Memorandum and Order Pursuant to Ruled 1:28*, 689 Mass.App.Ct. 1112, 46 N.E.3d 600 (2016).

There is no dispute as to the validity of a nominee trust[4] to split a mortgage into legal title held by MERS and beneficial interest retained by the lender. Rosa v. Mortgage Electronic Systems, Inc., 821 F.Supp.2d 423 (2011). There is no dispute that the dissolution of the original lender does not prevent MERS from assigning the mortgage as nominee for the current Note holder. Caraballo v. U.S. Bank, N.A., 88 Mass.App.Ct. 1106 (2015). However, there is a difference between having the right to do something and doing it right. The fatal flaw in the defendants' argument is in the introductory paragraph of their memorandum:

> The First Circuit has conclusively rejected Plaintiff's position and confirmed that MERS, as mortgagee and acting as nominee on behalf of a lender and the lender's successors and assigns may validly assign a mortgage. [citations omitted]. Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. Rule 12(b)(6), pp. 1-2.
>
>> Plaintiffs' allegations in the Complaint are incomplete. They claim that MERS was "representing itself to be acting as the Nominee of PMC," See Cmpl. ¶ 11. This is incorrect because as the Mortgage states, MERS was the mortgagee for PMC and PMC's successors and assigns. Id. fn. 1.

At the time that MERS filed the assignment from PMC to BoNYM in December of 2014, PMC did not exist and there were no successors or assigns.

---

[4] "A nominee trust is commonly used in the Commonwealth as a surrogate means to hold legal title to real estate." Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass.App.Ct. 282, 284 n. 6, 962 N.E.2d 221 (2012). **Unlike a traditional trust, the trustee of a nominee realty trust lacks power to act unless directed by the beneficiaries**. See Roberts v. Roberts, 419 Mass. 685, 688, 646 N.E.2d 1061 (1995); Worcester v. Sigel, 37 Mass.App.Ct. 764, 768, 644 N.E.2d 238 (1994). Torrence Van and Storage Co. V. DiPietri, Unpublished Opinion, fn. 3 & 4, N.E.3d 115, 2016 WL 787542 (Appeals Court, March 1, 2016). [Bold for emphasis].

### A. MERS Was Not The Mortgagee When It Purportedly Assigned the Mortgage To BoNYM in December of 2014.

As trustee holding legal title, MERS *had* the right to act as the mortgagee on behalf of PMC as the Note holder. If there was a successor to PMC, MERS would have had the right to act as mortgagee for the successor's benefit. There was no successor. If there was an assignment of the Note by PMC prior to its dissolution, MERS's would have had the right to act as mortgagee for the assignee's benefit. The plaintiffs have alleged that there is not[5] and the defendants have not proffered any evidence to prove otherwise. See Section II.

> "The firmly settled principle [is] that where an express trust fails for lack of a beneficiary, a resulting trust in favor of the settlor arises by operation of law." Spiegel's Estate v. Commissioner of Internal Revenue, 335 U.S. 632 (1949) 69 S.Ct. 337, 93 L.Ed. 288. See Redstone v. O'Connor, 70 Mass.App.Ct. 493 (2007); Hochberg v. Proctor, 441 Mass. 403 (2004).

As a matter of law, the nominee trust created by PMC failed in 2008, when it dissolved without a successor or recorded assignment of the mortgage. See Sullivan v. Kondaur Capital Corp., 85 Mass.App.Ct. 202, 7 N.E.3d 1113 (2014), *infra*.

---

[5] Complaint, Count I, ¶ 13. On May 18, 2016, WFB, representing itself to be acting as agent for BoNYM, recorded in the Registered Land section of the Land Court, Norfolk County Registry of Deeds, Document No. 1,352,415, a document dated March 16, 2016, and titled "Affidavit Pursuant to M.G.L. ch. 244 §§ 35B and 35C" ("Affidavit"), falsely swearing that BoNYM was both the Mortgagee, by the Assignment, Exhibit 3, and falsely swearing that, according to WFB's records, BoNYM was the "holder of the promissory note secured by the above mortgage."

Complaint, Count I, Prayer D. Bank of New York Mellon Trust Company is not the holder of the $1,200,000 promissory note given by the plaintiffs to Peoples Mortgage Corporation.

### B. MERS Had No Authority To Assign The Mortgage to BoNYM Where PMC Was Dissolved Without A Successor Or Assign.

Nowhere in its 11 pages of complementary argument and citations do the defendants answer the salient question: Who authorized MERS to assign the mortgage to BoNYM? Only the Note holder could. There is no evidence or even argument that PMC was the Note holder at the time of the assignment to BoNYM in 2014. See *infra*, Section II.

> [In a nominee trust] **the trustee does not have authority to act without direction by the beneficiaries, i.e. the beneficiaries control the trust property and what is done with it.** Penta v. Concord Auto Auction, Inc. 24 Mass.App.Ct. 635, 639 (1981); *R.C. Birnbaum and J.F. Manahan, The Nominee Trust in Massachusetts Real Estate Practice*, 60 Mass. L.Q. 364, 365 (1976). **For this reason, the relationship between the trustee and the beneficiaries of such a trust, at least as far as third persons dealing with the trust are concerned, is one of principal/agent rather than that of trustee/beneficiary in the conventional sense**. In the matter In Re Medallion Realty Trust, 103 B.R. 8,12 (D.Mass.1989) aff'd 120 B.R. 295 (D.Mass.1990), it was stated:
>
>> A person may be both an agent of and trustee for another if he undertakes to act on behalf of the other and subject to his control he is an agent; but if he is vested with the title to property, he holds for his principal, he is also a trustee. In such a case, however, it is the agency relationship that predominates and the principles of agency rather than the principles of trust, are applicable ... quoting A. Scott and W. Fratcher, *The Law of Trusts*, § 8 at 88, 95 (4th Ed.1987)
>
> Murphy v. Kelley, Decision, Cauchon, J., Massachusetts Land Court. October 28, 1992, Not Reported in N.E.2d 1992 WL 12153336. [Bold for emphasis].
>
> The principal-agent relationship is terminated by the death of either party. See Witherington v. Nickerson, 256 Mass. 351, 152 N.E. 707 (1926); Brown v. Cushman, 173 Mass. 368, 53 N.E. 860 (1899). In re Cloutier, 21 B.R. 64, 65, Bankr. L. Rep. P 68, 776 (US Bankruptcy Court, D.MA 1982).
>
> "An agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as [the agent] knows or should know them at the time he acts." Id. § 33. **"Whatever the original agreement or authority may have been,"** if the agent **"knows facts which should lead him to believe that his**

9

> **authority is restricted or terminated, he has a duty to act only within the limits of the situation as it is currently known to him."** Id. § 33 comment a. The "will [of the principal] may change.... Whatever it is at any given time, if the agent has reason to know it, his duty is not to act contrary to it. The fact that in changing his mind the principal is violating his contract with the agent does not diminish the agent's duty of obedience to it." Id. § 33 comment b. See also id. § 108(1) & comments b, c, & f. Gagnon v. Coombs, 39 Mass.App.Ct. 144, 151-152, 654 N.E.2d 54 (1995). [Bold for emphasis].

MERS was on notice by the lack of any communication with or direction from PMC, the original Note holder and only holder of record, that it had no authority to make the assignment to BoNYM. The assignment was fraudulent and void. See Section II, *infra*.

C. **The Plaintiffs Did Not Authorize MERS To Act Without Authority.**

The crux of the defendants' argument is that the mortgage given by the Plaintiff to PMC acknowledges that MERS and its successors and assigns is the Mortgagee. In complete form and context:

> TRANSFER OF RIGHTS IN THE PROPERTY
>
> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of this Note; and (ii) the performance of Borrowers covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage and grant to MERS **(solely as nominee for Lender and Lender's successors and assigns)** and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY of NORFOLK LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. [Caps in original][Bold for emphasis] Mortgage, p. 2

The mortgage is a contract "[i]n construing a contract, we must give reasonable effect to all terms whenever possible.". Liberty Mut. Ins. Co. v. Gibbs, 773 F.2d 15, 17 (1st Cir.1985). The mortgage is clear on its face that what MERS's has the right to transfer or assign to MERS's succesors or assigns is its own *legal title* as nominee. However, the purported assignment by

10

MERS to BoNYM was of <u>PMC's</u> *beneficial interest*. Exhibit 2. BoNYM did not become the assignee of MERS. It became the purported assignee of PMC. MERS had no right to do so without PMC's authorization. That is how a nominee trust works as a matter of law, *supra;* that is what the mortgage says; and that is what the plaintiffs agreed to as a matter of fact.

For the above reasons, the nominee trust failed in 2008, when PMC voluntarily dissolved without any successor or assigns; MERS was not the mortgagee in 2014; and the assignment by MERS to BoNYM was fraudulent and void.

II. **Count II States A Claim For Injunctive Relief Where The Wrongful Foreclosure And Sale Of The Plaintiff's Home Would Cause Imminent and Irreparable Harm To Them[6] And The Plaintiffs Have A Reasonable Likelihood of Success On The Merits.**

   A. **Imminent Danger Of Irreparable Harm.**

In <u>Frangos v. Bank of America, N.A.</u>, 1, 2016--- F.3d ----2016 WL 3409732 (CA 1st, 2016), the First Circuit held that there was no irreparable harm to the plaintiff where the foreclosure was cancelled. In the present case, the Land Court granted the preliminary injunction based on the pending Service Members Relief Act action and, *de bene*, representation by then counsel who appeared at the hearing, that BoNYM and WFB intended to proceed with the foreclosure sale, once they received the certificate of compliance. " Even where there is a dispute as to whether the mortgagor was in default or whether the party claiming to be the mortgage holder is the true mortgage holder, the foreclosure goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure. See <u>Beaton v. Land Court</u>, 367

---

[6]Conversely the delay is inconsequential to the defendants, where WFB, as the servicer for the mortgage, continues to assess the plaintiffs monthly interest and escrow. The plaintiffs continue to reside on the property, to carry homeowner's insurance, to pay the utilities and to maintain it at their expense.

Mass. 385, 393, 326 N.E.2d 302, appeal dismissed, 423 U.S. 806, 96 S.Ct. 16, 46 L.Ed.2d 27 (1975)., supra at 393, 326 N.E.2d 302." U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 646, 941 N.E.2d 40 (2011).

> **B. Even If, *Arguendo*, The Assignment By MERS to BoNYM Did Not Require PMC's authorization, BoNYM/WFB Does Not Have The Right To Foreclose.**

The issue of MERS's right to assign a mortgage after the dissolution of the original lender was comprehensively discussed by Magistrate Judge Collings and adopted by Judge Saris in Rosa v. Mortgage Electronic Systems, Inc., 821 F.Supp.2d 423 (2011):

> The Bankruptcy Court for the District of Massachusetts relied on the Kiah v. Aurora Loan Services, LLC, No. 10–40161–FDS, 2011 WL 841282 (D.Mass. Mar. 4, 2011) court's reasoning in deciding In re Marron, 455 B.R. at 7. The plaintiff alleged that because there was no chain of written assignments evidencing transfers of the note, MERS, as mortgagee and nominee for the note holder, must have remained the nominee for the original note holder. In re Marron, 455 B.R. at 5. Since the original note holder filed bankruptcy and dissolved approximately two years prior to MERS' assignment of the mortgage to the foreclosing entity, the plaintiff alleged the note holder could not have directed MERS to make the assignment and therefore the assignment and subsequent foreclosure were invalid. In re Marron, 455 B.R. at 5. In a crucial distinction from Kiah, the plaintiff did not admit there was a valid assignment of the note and argued the note was never transferred from the original lender. In re Marron, 455 B.R. at 5. However, the court found that "[t]he fact that the debtors' promissory note passed like a hot potato down a line of owners, including some in bankruptcy and liquidation, with no accompanying assignment of the note owner's beneficial interest in the mortgage, changes nothing," In re Marron, 455 B.R. at 7, because "MERS remained the mortgagee in its capacity as trustee and as nominee for whomever happened to own the note," id. In Massachusetts, there is no requirement for a chain of written assignments documenting the transfer of beneficial interest in a mortgage to various note holders. In re Marron, 455 B.R. at 7–8.

However, the decision in Rosa:

> Furthermore, **because possession of the Note is not required under Massachusetts law for a valid assignment or foreclosure**, Plaintiffs' claim that the Note must be produced also fails. (# 22 at 52); Kiah, 2011 WL 841282 at *8;

12

> Valerio, 716 F.Supp.2d at 128; In re Marron, 455 B.R. at 7; Ibanez, 458 Mass. at 651, 941 N.E.2d at 53. Plaintiffs fail to state a valid claim that the Note must be produced to validate the assignment or the foreclosure. Id. [Bold for emphasis].

was prospectively overruled by the SJC in Eaton v. Federal Nat. Mortg. Ass'n, 462 Mass. 569, 584 969 N.E.2d 1118 (2012):

> In accordance with these principles, and against the background of the common law as we have described it in the preceding section, we construe the term "mortgagee" in G.L. c. 244, § 14, to mean **a mortgagee who also holds the underlying mortgage note**. Id. [Bold for emphasis].

> [W]e do not conclude that a foreclosing mortgagee must have physical possession of the mortgage note in order to effect a valid foreclosure. There is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sales. Accordingly, we interpret G.L. c. 244, §§ 11–17C (and particularly § 14), and G.L. c. 183, § 21, to permit one who, although not the note holder himself, acts as the authorized agent of the note holder, to stand "in the shoes" of the "mortgagee" as the term is used in these provisions. Id. 586.

### C. Even If, Arguendo, BoNYM Holds The Note, MERS Has Not Complied With The Requirement for *Recording* All Assignments.

In U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637 941 N.E.2d 40 (2011), the SJC found that the foreclosing entity must provide a complete chain of assignments in order to have proper authority under the foreclosure statutes.

> Where a plaintiff files a complaint asking for a declaration of clear title after a mortgage foreclosure, a judge is entitled to ask for proof that the foreclosing entity was the mortgage holder at the time of the notice of sale and foreclosure, or was one of the parties authorized to foreclose under G.L. c. 183, § 21, and G.L. c. 244, § 14. A plaintiff that cannot make this modest showing cannot justly proclaim that it was unfairly denied a declaration of clear title. See In re Schwartz, supra at 266 ("When HomEq [Servicing Corporation] was required to prove its authority to conduct the sale, and despite having been given ample opportunity to do so, what it produced instead was a jumble of documents and conclusory statements, some of which are not supported by the documents and indeed even contradicted by them"). See also Bayview Loan Servicing, LLC v. Nelson, 382 Ill.App.3d 1184, 1188, 322 Ill.Dec. 21, 890 N.E.2d 940 (2008) (reversing grant of summary

judgment in favor of financial entity in foreclosure action, where there was "no evidence that [the entity] ever obtained any legal interest in the subject property"). Id., 650-651.

The SJC explained the requirements needed at the time of the notice of sale for a trust, assigned a pool of mortgages[7] and mortgage loans, to foreclose as follows:

> Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. However, there must be proof that the assignment was made by a party that itself held the mortgage. See In re Samuels, 415 B.R. 8, 20 (Bankr.D.Mass.2009). **A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage.** See In re Parrish, 326 B.R. 708, 720 (Bankr.N.D.Ohio 2005) ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant"). The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale (or the foreclosing entity must be one of the parties authorized to foreclose under G.L. c. 183, § 21, and G.L. c. 244, § 14). Ibanez, 651. [Bold for emphasis].

Ibanez was expanded by the Appeals Court in Sullivan v. Kondaur Capital Corp., 85 Mass.App.Ct. 202, 7 N.E.3d 1113 (2014) to require an unbroken chain of assignments.

> "[A] foreclosing mortgagee must demonstrate an unbroken chain of assignments in order to foreclose a mortgage, and now must also demonstrate that it holds the note (or acts as authorized agent for the note holder) at the time it commences foreclosure. Id., 210.

Clearly there were assignments which preceded the 2014 assignment by MERS to BoNYM and

---

[7]The assignment is from PMC to The Bank of New York Mellon Trust Company, N.A., as successor-in-interest to all permitted successors and assigns of JP Morgan Chase Bank N.A., as Trustee for Certificateholders of Nomura Asset Acceptance Corporation Pass-Through Certificates Series 2005-SAR2 at One Wall Street, New York, NY 10286. Complaint, Exhibit 4.

14

which required MERS to comply with the requirements set forth in Ibanez, *supra*, and Sullivan, *supra*, which it has not and which the plaintiffs have so alleged. See fn. 7.

**III.    Counts III and IV of the Complaint State A Claim For Conversion And Violation Of G.L. c. 93A, tRespectively, Where WFB Continued To Collect Mortgage Payments After PMC Was Dissolved And Where The Defendant's Continued To Pursue Foreclosure In Violation of G.L. c. 244, § 14 After Receiving A G.L. c. 93A Demand Letter To Cease And Desist.**

The defendants argue that Count III of the Complaint for conversion by WFB of the plaintiff's mortgage payments since the dissolution of PMC in 2004 and Count IV for the violation of G.L. c. 93A, where the defendant's continued to pursue foreclosure in violation of G.L. c. 244, § 14 after receiving a G.L. c. 93A demand letter to cease and desist. For the reasons set forth above, Count I states a claim and, correspondingly, so do Counts III and IV.

**Summary and Conclusion**.

> This court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms' "; the failure to do so results in "no valid execution of the power, and the sale is wholly void." Ibanez, 458 Mass. at 646, 941 N.E.2d 40, quoting Moore v. Dick, 187 Mass. 207, 211, 72 N.E. 967 (1905). See Pryor v. Baker, 133 Mass. 459, 460 (1882) ("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself,10 and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers. Pinti v. Emigrant Mortg. Co., Inc., 472 Mass. 226, 233, 33 N.E.3d 1213.
>
> I concur fully in the opinion of the court, and write separately only to underscore that **what is surprising about these cases is not the statement of principles articulated by the court regarding title law and the law of foreclosure in Massachusetts, but rather the utter carelessness with which the plaintiff banks documented the titles to their assets.** There is no dispute that the mortgagors of the properties in question had defaulted on their obligations, and

that the mortgaged properties were subject to foreclosure. Before commencing such an action, however, the holder of an assigned mortgage needs to take care to ensure that his legal paperwork is in order. Although there was no apparent actual unfairness here to the mortgagors, that is not the point. Foreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it. As the opinion of the court notes, such strict compliance is necessary because Massachusetts both is a title theory State and allows for extrajudicial foreclosure. Ibanez, *supra*, 655.

This case comes down, with all due respect, to one of two results. Either MERS, like its parent and client banks, is too big to fail or it is required to act according to law and suffer the consequences, if it does not. It has not.

WHEREFORE, for the foregoing reasons, the plaintiffs oppose the defendants' motion to dismiss for failure to state a claim for which relief can be granted (Fed.R.Civ.P. Rule 12(b)(6)) and pray that their motion is denied.

> Respectfully submitted,
>
> The plaintiffs,
> By their attorneys,
>
> */s/ John N. Lewis*
> John N. Lewis BBO# 298520
> JOHN N. LEWIS & ASSOCIATES
> 42 Spring St., Suite 5
> Watertown, MA 02472-3444
> (617) 393-3450
> jlewis4284@aol.com

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 12, 2016.

> */s/ John N. Lewis*
> John N. Lewis@aol.com