## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

JOHN N. LEWIS and SUSAN A. LEWIS,    )
    )
    Plaintiffs,    )
    )
    v.    )        **Civil Action No.**
    )        **16-11122-FDS**
BANK OF NEW YORK MELLON    )
TRUST COMPANY, N.A.;    )
MORTGAGE ELECTRONIC    )
REGISTRATION SYSTEMS, INC.; and    )
WELLS FARGO BANK, N.A.,    )
    )
    Defendants.    )
_____)

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

    This action arises from a home mortgage foreclosure. Jurisdiction is based on diversity of citizenship. Plaintiffs John N. Lewis and Susan A. Lewis have brought suit against defendants Bank of New York Mellon Trust Company, N.A. ("BNYM"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A ("WFB") for alleged violations of law stemming from proceedings to foreclose on their home.[1] The complaint asserts claims for declaratory and injunctive relief, conversion, and violation of Mass. Gen. Laws ch. 93A. Plaintiffs essentially seek a two-prong declaration that MERS, the mortgagee, did not have authority to assign the mortgage to the purported note holder BNYM, and that BNYM is not the holder of the promissory note that plaintiffs granted to their original lender, Peoples Mortgage Corporation ("PMC").

---

[1] Plaintiffs are not proceeding *pro se*. Rather, they are represented by John N. Lewis & Associates, the law firm of Mr. Lewis, who is an attorney licensed to practice in Massachusetts.

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion will be denied.

## I.   Background

Unless otherwise noted, all facts are stated as alleged in the complaint and its accompanying exhibits.

### A.   Factual Background

In December 2004, plaintiffs purchased a home at 22 Cutler Road, Needham, Massachusetts. (Compl. ¶ 5). To finance their purchase, plaintiffs executed a $1.2 million promissory note in favor of PMC, their lender. (*Id.* ¶ 6; Compl. Ex. 1).[2] The note was secured by a mortgage on the property. (Compl. ¶ 6).

The mortgage designates plaintiffs as the borrowers, PMC as the lender, and MERS as the mortgagee. (Compl. Ex. 2 at 1). According to the mortgage, MERS "is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns." (*Id.*). Plaintiffs agreed to "hereby mortgage, grant and convey to MERS (solely as nominee for lender and lender's successors and assigns) and to the successors and assigns of MERS, with power of sale the [Cutler Road property]." (*Id.* at 2). MERS promptly recorded the mortgage in the Norfolk County Registry of Deeds. (Compl. ¶ 7).

In November 2008, PMC was voluntarily dissolved. (*Id.* ¶ 9).[3] In October 2014, plaintiffs stopped paying their mortgage. (*Id.* ¶ 10). According to plaintiffs, they did so "upon a coincidental review of their title which revealed that PMC had been dissolved and that there was

---

[2] Plaintiffs filed their copy of the promissory note as an exhibit to the complaint. (Compl. Ex. 1). Defendants have not submitted the actual note, which they contend is held by BNYM.

[3] It is unclear whether PMC was still the note holder at that time.

no record of any assignment of the mortgage in the Land Court or Norfolk Registry of Deeds or that the note had been sold, transferred or assigned to a subsequent holder." (*Id.*). At that time, MERS still owned the legal title to the mortgaged premises in trust for the note holder (the successors and assigns of PMC).

In December 2014, MERS assigned the mortgage to BNYM, who defendants contend was the note holder at the time of default. (*Id.* ¶ 11; Compl. Ex. 4 at 1). The assignment, which was prepared by WFB, was signed by an assistant secretary of MERS, "as nominee for [PMC], its successors and assigns." (Compl. Ex. 4 at 2). The assignment was recorded in January 2015. (*Id.*). At all times relevant to this action, WFB has been acting as the servicer for plaintiffs' loan on behalf of BNYM. (*Id.*; Compl. Ex. 6).

In July 2015, BNYM initiated foreclosure proceedings by filing a Servicemembers Civil Relief Act case in the Massachusetts Land Court. (Compl. ¶ 14). In May 2016, WFB recorded an affidavit with the Registry of Deeds pursuant to Mass. Gen. Laws ch. 244, §§ 35B and 35C. (*Id.* ¶ 13). The affidavit identifies both the Cutler Road property and the original mortgage, which was granted to MERS "as nominee for [PMC], its successors and assigns." (Def. Ex. 1).[4] The affidavit is signed by a vice president of loan documentation for WFB and states that "the mortgage was assigned to [BNYM], as successor-in-interest to all permitted successors and assigns of JPMorgan Chase Bank, N.A., as Trustee, for certificate holders of Nomura Asset Acceptance Corporation Mortgage Pass-Through Certificates, Series 2005-AR2 on December 23, 2014." (*Id.*). It further states that BNYM is "the holder of the promissory note secured by the above mortgage." (*Id.*).

---

[4] Plaintiffs did not attach the affidavit as an exhibit to the complaint. Defendants provided the Court with a copy of it as a recorded public record during the motion hearing, and they subsequently filed it as an exhibit. (Dkt. 20).

B.     **Procedural Background**

Plaintiffs filed suit in the Massachusetts Land Court in May 2016, seeking to prevent BNYM from exercising the power of sale and conducting a foreclosure.  The complaint asserts claims for (1) declaratory judgment, (2) injunctive relief, (3) conversion, and (4) violation of Mass. Gen. Laws ch. 93A.  It alleges that "the assignment from [MERS] to [BNYM] is fraudulent and void," and that "[BNYM] is not the holder of the . . . promissory note given by [plaintiffs] to [PMC]."  (Compl. ¶ 15).  It also alleges conversion against WFB for wrongfully collecting $784,500 in plaintiffs' monthly mortgage payments from 2008 to 2014.  (*Id.* ¶¶ 20-23).  Finally, it alleges that MERS, WFB, and BNYM violated Chapter 93A by "conspir[ing] to deceive [plaintiffs] . . . into believing that [BNYM] was the owner of the mortgage for the purpose of foreclosing on the Cutler Road property and exercising the mortgage's power of sale, knowing that [PMC] did not exist at the time of the assignment and therefore MERS did not have legal title or authority to make the assignment and further filing a false affidavit claiming that BNYM was the holder of the note."  (*Id.* ¶ 25).  The complaint seeks declaratory and injunctive relief from the foreclosure proceedings and money damages.

Defendants removed the case to this Court in June 2016.  They have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

II.     **Legal Standard**

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set

forth "factual allegations, either direct or inferential, respecting each material element necessary

to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301,

305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1,

6 (1st Cir. 2005)).

## III.   <u>Analysis</u>

Defendants have moved to dismiss the complaint for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6).  They contend that the "four-count complaint . . . fails as a matter of law

because each claim is predicated on the incorrect legal conclusion that MERS lacks legal

authority to assign the mortgage [to BNYM]."  (Def. Mem. 1).

Plaintiffs raise two principal arguments in opposition.  First, they contend that the

mortgage assignment from MERS to BNYM is void because at the time of the assignment in

2014, PMC had already been dissolved, and therefore MERS had no authority as the nominee for

"PMC, its successors and assigns" to assign the mortgage.  Second, they contend that BNYM is

not the holder of the promissory note, and therefore it cannot foreclose on plaintiffs' home.  The

Court will address each issue in turn.

### A.   <u>Assignment of the Mortgage</u>

Before addressing the issues raised by defendants' motion, some background on

foreclosure law in Massachusetts and the MERS system is warranted.

Under Massachusetts law, if a mortgage grants a statutory "power of sale" and the mortgagor defaults, as is the case here, an authorized party "may sell the property at a public auction and convey the property to the purchaser in fee simple." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 641 (2011) (citing Mass. Gen. Laws ch. 183, § 21). "Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without judicial oversight, [courts must] adhere to the familiar rule that one who sells under a power of sale must follow strictly [the statute's] terms." *Id.* at 646 (internal quotation marks and alterations omitted). "One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose." *Id.* at 647. "[O]nly 'the mortgagee or his executors, administrators, successors or assigns' can exercise a statutory power of sale . . . and foreclose without prior judicial authorization." *Mills v. U.S. Bank, NA*, 753 F.3d 47, 50 (1st Cir. 2014) (citing Mass. Gen. Laws ch. 183, § 21); *accord Ibanez*, 458 Mass. at 646.

A mortgagee has the authority to exercise the power of sale only if it was the assignee of the mortgage at the time of the notice of sale and the subsequent foreclosure sale. *Ibanez*, 458 Mass. at 648. However, for foreclosure sales occurring after June 22, 2012, simply holding the mortgage is necessary, but not sufficient, to exercise a power of sale; a mortgagee must also hold the promissory note or act as the authorized agent of the note holder. *Eaton v. Federal Nat'l Mortg. Ass'n*, 462 Mass. 569, 582-84 (2012); *accord Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 356 (1st Cir. 2013) ("Where the note and mortgage are unified at the time of foreclosure, our inquiry must come to an end." (citing *Eaton*, 462 Mass. at 582-84)).

The MERS system is intended to lower transaction costs and facilitate the securitization of mortgage notes. The First Circuit has described the "MERS business model" as follows:

> MERS functions to streamline the process of securitization and trading of
> mortgages. A MERS member, upon becoming a lender, names MERS as its
> nominee and the mortgagee of record and inputs the mortgage into the MERS
> database. The mortgage note can then be assigned freely among MERS members,
> with MERS—as mortgagee of record—authorizing and memorializing these
> trades while circumventing much of the time and paperwork associated with
> traditional assignments. Only when a note is transferred to a non-MERS member
> institution does MERS transfer away its interest as mortgagee, thus ending its
> involvement in the assignment process.

*Woods*, 733 F.3d at 351 n.1; *see also Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 286-88 (1st Cir. 2013). If a borrower defaults and the note holder seeks to foreclose on the collateral, MERS, acting as the nominee for the original lender and its successors and assigns (the subsequent note holders), assigns the mortgage to the note holder to comply with the rule that the mortgage and note must be unified before foreclosure.

The First Circuit has repeatedly rejected challenges to the legality of the MERS system—that is, splitting a mortgage from the note, naming MERS as the nominee and holder of the bare legal interest in the mortgage while the beneficial interest (the note) trades freely among MERS members without official recordings, and then allowing MERS to assign the mortgage to the note holder if foreclosure proceedings are necessary. *See Butler v. Deutsche Bank Trust Co. Am.*, 478 F.3d 28, 32-33 (1st Cir. 2014) ("Suffice it to say, Massachusetts allows a mortgage to be split from its underlying note, and where, as here, MERS possesses a legal interest in that mortgage, such an interest is transferrable." (citations omitted)); *accord Serra v. Quantum Servicing, Corp.*, 747 F.3d 37, 40 (1st Cir. 2014) ("[W]e [have] ruled unequivocally that MERS may validly possess and assign a legal interest in a mortgage."); *Woods*, 733 F.3d at 355 (concluding that "MERS, as the mortgagee of record, possessed the ability to assign [the] mortgage"); *Culhane*, 708 F.3d at 293 ("MERS's role as mortgagee of record and custodian of the bare legal interest as nominee . . . fit[s] comfortably within the structure of Massachusetts mortgage law.").

Plaintiffs contend that because "[a]t the time that MERS filed the assignment . . . to [BNYM] in December of 2014, PMC did not exist and there were no successors or assigns," MERS did not have authority on behalf of PMC and its successors and assigns to assign the mortgage to BNYM.  Such an argument, however, has been consistently rejected by courts in this district.  In essence, "[t]he dissolution of the original lender does not affect MERS'[s] authority to assign a mortgage."  *Boguslav v. BLB Trading, LLC*, 136 F. Supp. 3d 11, 14 (D. Mass. 2015) (citing *Rosa v. MERS*, 821 F. Supp. 2d 423, 431 (D. Mass. 2011)).  As one court has explained:

> [P]laintiffs also suggest . . . that MERS, as only a nominee, lacked the authority to assign the mortgage loan to defendant.  This argument is without merit.  MERS was named as mortgagee and nominee for [the original lender] and its successors and assigns.  As a result, MERS was authorized to assign plaintiffs' mortgage to defendant, and "is not required to prove its nominee relationship or that it had authorization to make the assignment from the current holder of the note."  *Rosa*, 821 F. Supp. 2d at 430 (citing *In re Marron*, 455 B.R. 1, 6 (Bankr. D. Mass. 2011)) . . . .  *That [the original lender] may have ceased all operations nine months before the assignment is of no moment.*  "The dissolution of the original lender does not affect MERS'[s] authority to assign a mortgage."  *Rosa*, 821 F. Supp. 2d at 431 (citing *Kiah v. Aurora Loan Servs., LLC*, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) (bankruptcy and dissolution of original lender "would not prevent its successors and assigns . . . from seeking transfer of the mortgage from MERS")).

*Almeida v. U.S. Bank Nat'l Ass'n*, 2014 WL 907673, at *3 (D. Mass. Mar. 10, 2014) (emphasis added); *accord Mendoza v. BNY Mellon Trust Co. N.A.*, 126 F. Supp. 3d 166, 167-68 (D. Mass. 2015) ("The mere fact that the originating bank ceased operations prior to assignment does not necessarily mean MERS lacked authority to make the assignment.").[5]

---

[5] *See also Lindsay v. Wells Fargo Bank, N.A.*, 2013 WL 5010977, at *12 (D. Mass. Sept. 11, 2013) (rejecting the argument that "the assignment of the mortgage was void because MERS could not act on the behalf of a dissolved entity" because "[a] bankrupt entity's dissolution does not invalidate a subsequent assignment of a mortgage from MERS, acting as mortgagee and nominee for the original and subsequently bankrupt lender and lender's successors and assigns, if the foreclosing entity can establish that it became a proper holder of the mortgage"); *Kiah*, 2011 WL 841282, at *4 ("MERS has the power to act as the agent of any valid note holder under the terms of the mortgage documents.  The plain language of the mortgage states that MERS was acting as nominee for [the original lender] and its successors and assigns.  [The lender's] dissolution would not prevent its successors

Accordingly, PMC's dissolution in 2008 did not preclude MERS from assigning the mortgage to BNYM in 2014.

### B.      Identity of the Note Holder

In addition to challenging the validity of the mortgage assignment from MERS to BNYM, plaintiffs also challenge BNYM's status as the holder of their promissory note.  (Compl. ¶ 15).  The complaint alleges that the affidavit recorded by WFB pursuant to Mass. Gen. Laws ch. 244, §§ 35B and 35C, stating that BNYM is the holder of the note, is false.  (*Id.*).

The theory underlying those allegations is unclear.  The complaint alleges that "[n]o documents reflecting MERS['s] transfer of the beneficial interest of [PMC] to [Nomura] or from [Nomura] to [JP Morgan Chase] or from [JP Morgan Chase] to BNYM was ever recorded in the Land Court or the Registry of Deeds, in violation of [Mass. Gen. Laws ch. 185, § 67]."  (*Id.*).  If the lack of recordings reflecting transfer of the note among MERS members is the sole reason why plaintiffs allege that BNYM is not the note holder, that is insufficient to state a claim.  It is well-established that recordings of note transfers between MERS members are not required; the MERS system permits its member banks to securitize, trade, and assign the underlying notes while the mortgage is held by MERS and recorded only once.

Nevertheless, the complaint alleges that BNYM does not hold plaintiffs' promissory note, and the only evidence to the contrary is the affidavit recorded by WFB.  At this stage, BNYM has not produced the note for inspection, and MERS has not submitted the note's transaction history.  Accordingly, based on the record before the Court, it is at least possible that BNYM is

---

and assigns, including [the eventual loan servicer] from seeking transfer of the mortgage from MERS.  Accordingly, the dissolution of [the lender] would not and could not prevent [the servicer] from obtaining an assignment of the mortgage from MERS, both as a matter of law and according to the arrangement that existed between MERS and [the servicer] as a successor and assign of [the lender]."); *In re Marron*, 455 B.R. at 5 ("MERS remained the mortgagee in its capacity as trustee and as nominee for whomever happened to own the note.").  To the extent that plaintiffs contend that PMC dissolved without any successors or assigns, that is simply not a plausible allegation; surely some entity was assigned the note or purchased it from PMC.

not actually the note holder.  However, whether plaintiffs' allegation is sufficiently plausible to survive a motion to dismiss is a closer question.

There is at least some question whether dismissal is appropriate where defendants have not produced the actual note as endorsed.  *See, e.g.*, *Woods*, 733 F.3d at 356 (affirming grant of motion to dismiss where there was "no real dispute that [defendant was] the current possessor of [plaintiff's] promissory note" because plaintiff did not allege that defendant did not own the note, and because defendant "presented what appears to be the note, endorsed in blank, at oral argument before the district court and as an appendix to its motion to dismiss"); *Olabode v. Caliber Home Loans, Inc.*, 2015 WL 4111439, at *5 (D. Mass. July 8, 2015) (denying motion to dismiss and ordering limited discovery even though plaintiffs' allegations that defendant was not the note holder were "exceedingly thin" because defendant had produced the physical note); *Monges v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 1308146, at *9 (D. Mass. Mar. 23, 2015) (granting motion to dismiss declaratory judgment claim on issue of note ownership where defendants produced a copy of the note endorsed in blank and plaintiffs did not present evidence to the contrary).

Under the circumstances, while it appears doubtful that BNYM is not presently the owner of plaintiffs' promissory note, dismissal is at least premature.  Accepting the complaint's allegations as true and drawing all reasonable inferences on behalf of plaintiffs, the most prudent course of action at this stage of the case is to deny the motion to dismiss.  If defendants produce further evidence that BNYM owns the note—for example, the actual note signed in blank or MERS's internal records of the note's transaction history—and plaintiffs fail to rebut that evidence, there appears to be no theory upon which plaintiffs can prevail, and the case could be swiftly resolved on summary judgment.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, defendants' motion to dismiss is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  August 31, 2016                              United States District Judge